UNITED STATES *v.* GRAHAM & ZENGER, INC. (No. 4426)[1]

United States Court of Customs and Patent Appeals, November 1, 1943.

*Paul P. Rao,* Assistant Attorney General (*Richard F. Weeks,* special attorney, of counsel), for the United States.

*Daniel P. McDonald* for appellee.

[Oral argument October 6, 1943, by Mr Weeks and Mr. McDonald.]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Judge, delivered the opinion of the court:

[1] C. A. D. 262.

In September 1935 certain drinking glasses were imported by appellee from Belgium. In 1940 the importation was appraised by the appraiser at the port of New York on the basis of foreign value, pursuant to subsection (c) of section 402 of the Tariff Act of 1930. Appellee appealed for a reappraisement of the merchandise by a judge of the United States Customs Court, contending the proper basis for appraisement to be export value under subsection (d) of said section, for the reason that the foreign market for merchandise, such or similar to that imported, was controlled at the time the involved goods were exported. Since the time of importation was prior to the enactment of the Customs Administrative Act of 1938 the determination of the issue had to be made under the law as it was at the time of importation.

The involved subsections read as follows:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

The record in the case consists of the oral testimony of two witnesses for the plaintiff and two special agents' reports offered by the Government.

It appears that on April 11, 1935, all of the glass manufactures in Belgium formed a syndicate or association known as Groupement des Gobeleteries Belges, and in August of the same year the syndicate was placed under the direct supervision of the Belgian Government by official decree. The purpose of the syndicate and the Belgian Government was to stabilize the glassware industry, which was then operating in a fluctuating market because of the devaluation of the Belgian franc.

All manufacturers of glassware in Belgium were compelled to join the syndicate, which fixed the minimum prices at which the manufacturers had to dispose of their products for home consumption as well as for each of the countries to which glassware was to be exported. Failure on the part of any manufacturer to sell his product at at

least the fixed prices resulted in severe penalties, and the manufacturer alone was held responsible for compliance with the price rules.

In the Belgian market every purchaser of glassware was required to set out the purpose for which he sought the product, whether for home consumption or for export to a foreign country. When the manufacturer received an order for glassware to be exported, he would apply to the syndicate for an export license which was made in duplicate, the original being sent by the syndicate to the manufacturer and a copy thereof to the Minister of Economic Affairs at Brussels. The original export license was sent by the manufacturer with the shipment to the port of exportation, where it was taken by the customs officials and sent to the Ministry to be compared with the copy. No glassware could be sold for home consumption except on condition that it was not to be exported.

Glassware purchased for home consumption could be resold at any price, but only for the home market. With respect to glassware purchased for exportation, its purchase price could not be less than the minimum required by the syndicate for the country designated as being the destination of the goods, and it could not be shipped to any other country. There was no restriction as to resale in any foreign country.

The single judge found that foreign value was not the proper basis for appraisement in view of the principles laid down in the following cases: *Goodyear Tire & Rubber Co.* v. *United States*, 11 Ct. Cust. Appls. 351, T. D. 39158; *J. H. Cottman & Co.* v. *United States*, 20 C. C. P. A. (Customs) 344, T. D. 46114; *United States* v. *Half Moon Mfg. & Trading Co., Inc.*, 28 C. C. P. A. (Customs) 1, C. A. D. 115; *United States* v. *Paul J. Pauls*, 28 C. C. P. A. (Customs) 7, C. A. D. 116. He also found it had been established by the record that the proper dutiable value of the imported merchandise was the export value thereof. The Government does not contend that, if foreign value is not the proper dutiable basis, the export value is not such basis.

Upon application to an appellate division of the said court for the review provided by law, the judgment of the trial court was affirmed, and from that judgment this appeal was taken.

Appellant here concedes that if the home market is controlled the unit values adopted by the appraiser do not constitute proper dutiable value. It contends that the restriction imposed by the Belgian Government on the exportation of merchandise sold originally for home consumption is not such a restriction upon use, disposition or resale as would preclude the existence of a foreign value under section 402 (c), *supra*. Appellant urges that it was a necessary restriction as part of a scheme to stabilize the glassware industry and

to insure to the Government that the members of the syndicate would adhere to the prices established as aforesaid.

It is true that anyone in Belgium could purchase glassware for home consumption at at least the minimum price. It is also true that anyone might purchase glassware for any foreign country for at least the minimum price fixed for that country. There was no restriction on resale prices, either in the home or export markets. However, any dealer in Belgium purchasing glassware for export was entitled merely to a commission of 5 per centum on the price paid the manufacturer.

The merchandising practice herein set out does not, in our opinion, constitute the kind of trading contemplated by section 402 (c) *supra*, for the reason that it is not a price freely offered to all purchasers. Clearly all purchasers are not freely offered a price for the reason that those who purchase for home consumption are not free to dispose of the property they buy in all markets. The mandate of the Belgian Government which precludes such purchaser from disposing of his glassware for any use save that of home consumption clearly makes the sale conditional. It is a restriction as to use, and therefore the market is controlled. In *J. H. Cottman & Co.* v. *United States, supra,* this court held that the Congress intended foreign market value to mean conditions which exist in a free, open, unrestricted market where the buying and selling of goods was under normal competitive conditions. The Belgian glassware market, as far as the instant case is concerned, is not such a market. It may be, as urged by appellant, that at the time of this importation it was the ordinary course of trade in Belgium to buy and sell glassware for home consumption with the aforesaid restriction attached to the sale thereof. Even if such be considered the ordinary course of trade, it is clear from this record that there was no free, open, unrestricted market as provided for in the statute.

We do not deem it necessary to discuss the cases relied upon in the opinion of the trial judge, for the reason that generally speaking they all lay down the principle that a foreign market is controlled when restrictions are imposed on the resale, free use, dominion over the merchandise, or confining of sales to selected purchasers.

The Government seems to rely somewhat strongly upon the case of *United States* v. *Michele Diagonale,* 22 C. C. P. A. (Customs) 517, T. D. 47497. In that case the merchandise consisted of silver filigree merchandise freely offered to all purchasers in Italy at prices fixed by an association composed of dealers in the foreign market. However, the record there disclosed no restriction upon the resale, use or other disposition by the purchasers and the court held that the mere fixing of the initial selling prices did not prevent the finding of foreign value. So here, the fixing of a minimum price for glassware is not

of itself sufficient to preclude a finding of foreign value, but in this case there was a restriction on glassware sold for home consumption which followed the merchandise to its use. Because of this difference in fact, the decision in the *Diagonale* case, *supra*, is without avail to appellant here.

Appellant contends that restraints imposed by the sovereign on the interchange of goods because of war or abnormal world conditions do not convert an otherwise free market into a restricted one. To read this contention is to answer it. Wherever a restraint is imposed upon the use of purchased goods there can be no free market, regardless of whether such restraint has been imposed by the sovereign or a private association, cartel, or syndicate. The very essence of freedom is taken from a sale of goods accompanied by any restraint with respect to its resale, use or other disposition, regardless of the source of such restraint. Our tariff acts must be interpreted as written, and not so as to meet the exigencies of foreign trade or governments. If, as urged by appellant, the regulations by foreign governments of the free flow of goods might render it impossible to find a foreign value, export value, or United States value for many if not all commodities, in our opinion the remedy lies with the Congress and not with the courts. *United States* v. *Half Moon Mfg. & Trading Co., Inc., supra.*

From what has hereinbefore been said we do not deem it necessary to discuss the request made by appellant for this court to take judicial notice that all governments, including our own, are today restricting the movement of goods in international trade by various means.

For the reasons heretofore stated, the judgment of the United States Customs Court is *affirmed.*